Good afternoon, ladies and gentlemen. This is the time for argument and re-hearing on bank in the United States v. Lopez. And counsel for the defendant, the appellant, may proceed. Thank you, Your Honor. Good afternoon, Your Honor. Steve Hovechek, federal defenders on behalf of Angelica Lopez. Your Honors, in 1986, Congress created the Brings to Offense as part of a comprehensive statutory scheme designed to punish the very inception of alien smuggling all the way to the end, starting with an inducement offense, and then the Brings to Offense, which covers when the alien arrives at the United States, continuing on to a transportation offense, which covers movement within the United States. So it's your position that the Brings to Offense ends as soon as the alien and the smugglers put their toe across the border, and then from that point on, it has to be a transportation offense, or it's no crime at all? Yes, it is, Your Honor. So what do we do with drug smuggling conspiracies or enterprises where the object of the enterprise is to bring the drugs from some place outside the country to some place in the interior of the country? The construction that we're proposing I don't think in any way inhibits the government's ability to prosecute either of those cases. Number one, this isn't a conspiracy. But why couldn't they be prosecuted under an aiding and abetting theory for liability for the bringing to, whether it's drugs or people? There's no question that Ms. Lopez could be prosecuted as an aider and abetter for this crime. And, in fact, I think under our – under the construction that we're urging today that the results in Ramirez-Martinez and Angwin would be the same, because in both of those cases, there was a showing that there was action on the part of the charged defendant prior to the arrival at the border. I believe in Angwin, the person was there right where they arrived within minutes of their arrival. Same thing in Ramirez-Martinez, where this Court concluded that it was Ramirez-Martinez's conduct in luring the aliens that would have actually constituted as aiding and abetting. But we don't have a conspiracy. I mean, conspiracies clearly are continuing offenses. It's not charged here. And I think the other portion of your question related to the drug importation, and that, I think, is covered by 3237 and this Court's decision in Bernard. And I don't think that in any way that the construction of this immigration statute that we're proposing today is in any way inconsistent with the harm. What – how do we make a – what I would term a common-sense understanding of bringing someone to a place? If I agree to bring a friend to Portland, I think they would be shocked if I dropped them at the first sign that says, entering Portland, and said, I'm done. You know, I think – doesn't it sort of assume that you're going to a place within that is an unexpected destination, to their hotel downtown, in my example? I don't think so. I think that it would be shocking to say that if you're brought to the United States that – and then you arrive, say, in San Diego County, and then you have to drive 120 more miles for two more hours to get to Los Angeles, and during that entire time, all of which you are inside the United States, it's still said that you're being brought to the United States. And under your interpretation, the same could be said of one and a half miles as the two hours. I mean, the logic of your position is that it stops right then. And so the person who is one foot inside the border and takes them another two feet commits no crime, or not – doesn't commit this crime. Well, the person who takes them the other two feet, if they're there within a couple feet of the border, they probably had some sort of prearrangement, as was the case in Ramirez-Martinez and Angwin, and also Aslam, the Second Circuit case that ultimately was the source of this doctrine. So I don't think that anyone's getting away here. Congress still has a seamless web of liability that goes all the way back to inducement and continues on. And there really wasn't any reason in 1986 for Congress to think, well, we have to be And the penalties at that point, back in 1986, were exactly the same. Now, of course, if this Court broadly reads the brings to offense, it will subject people like Ms. Lopez, without any evidence that she was an aider and abetter before the entry, to a minimum mandatory penalty that didn't exist when Congress initially created this scheme. But where did your client's conduct begin, transportation conduct? Well, my position is that the evidence at trial was that her client – my client's conduct began on the day that the individuals were picked up. Where? That was her testimony. Where? Where? I'm sorry about it. Where? On the United States side and in the Southern District of California. That's a pretty large place. Where? How far from the border? It was just a few miles from the border. Under your construction, then, if somebody picks somebody up in Mexico and drives them to Los Angeles, one person, is that two crimes or one crime? I think it's two crimes. So they can be convicted of – and have multiple penalties for bringing them to the United States and then transporting them once they got there? That's correct. But we have some case, although under an older statute, that seems to say, no, you can't do that. Sanchez-Vargas, I think? No? No, I'm not familiar with that. But you would say it would be one crime? I think it's two crimes. That's correct. And again, I think that even if you pick them up on this side of the border, if there's demonstrated evidence that you acted prior to their arrival, then, Dick, you could be gotten for what you do on this side as well as aiding and abetting the brings, too. I have a hard time understanding why you're aiding and abetting bringing somebody in by a plant, arranging to transport them after they get there. Well, that's what the analysis was in Ramirez-Martinez. Effectively, it said that, look, if you agree in advance to be the person that's going to transport them once they arrive at a particular location, then that's part of the luring of them into the United States. So that was a theory in Ramirez-Martinez. But that was the theory. Is that your theory? Or that was a theory? Well, that was one of the two theories that Ramirez-Martinez. No, but you're in an unbanked court. What is your theory? Well, my theory is, is that you have to act prior to the person's arrival before you can be responsible. And there has to be a showing under standard aiding and abetting law that you somehow encouraged or facilitated or otherwise helped bring about the offense. The offense being coming there, so it has to be you have to aid and abet coming there. And I don't know how to arrange them to transport them after that aids and abets them coming there. Well, I certainly would argue, you know, as the defense lawyer, that it didn't. But I think that that is an available theory that the government could try to seek a conviction under. So my point is, is that the construction that we're offering is not cutting off all of the border. There is the possibility of aiding and abetting liability under certain circumstances. And as I understand your theory, you would concede that if a person's role in the smuggling venture was the transporter from somewhere on the U.S. side near the border to some interior part like Los Angeles, they could be found in violation of the that they that their participation had been procured sometime prior to the actual crossing of the border. Yes. If there was a showing that that facilitated or otherwise encouraged the principals who are committing the crime under standard aiding and abetting. So even though we have separate participants in different portions of the smuggling venture, including the people who take the money, the people who serve as the coyotes, the people who serve as the transporters, and I don't know if there's somebody else, they could all be found guilty as long as their participation could be shown to have been procured prior to the actual crossing. That's correct. The construction that we're offering would not preclude liability under those circumstances. There would have to be compliance with aiding and abetting law. But the problem in this case is that the district court instructed on this immediate destination. So this whole appeal turns just simply on a question of sufficiency of the evidence. We don't really need, under your theory, to change our interpretation of the statute. We just need to declare that because there was no proof that Ms. Lopez was recruited any earlier than the day on which she was arrested, that a motion for judgment of acquittal should have been granted. That would resolve the case. I mean, if you don't agree with me on the sufficiency claim, then there's also the jury instruction claim. The jury instruction focused the jury on post-entry activity. It told them to focus on this immediate destination language. And the district court allowed Ms. Lopez to be convicted under a theory that she acted after they were in the United States and sometime before they reached their immediate destination. So if you don't agree with me on the sufficiency claim, then there's also the jury instruction claim. And because that took the jury's focus away from whether or not Ms. Lopez did things before they came to the United States, it's a constitutional error, I think, structural, but at least under the harmless beyond a reasonable doubt standard, with a sufficiency claim as close as this, that the error couldn't possibly be harmless. Is it of any relevance that there are actually two, bringing two crimes, A-1 and B, and A-2, I guess? And that it seems that the switch to A-2, at least as a matter of prosecution, occurred because of the change in the penalties. Is that right? That's my idea. Yes, I believe that's the case. I mean, now that there are greater penalties available for brings two, there's an effort more broadly to do that. So you end up with this odd anomaly, because A-1 seems to be, in some ways, the more serious crime in the sense that the person is coming over not by the border. And A-2 was originally about people just coming up to the border, the Mariel-Cuban problem, and now they've kind of split. Well, there are some other differences as well. The A-1 crime applies whether or not you have permission to be here from the alien's perspective, whereas the A, I guess it's the A-2 crime, requires that you either know or be reckless as to the person's lack of permission. But if Congress came back 10 years after this statutory scheme was created in 1996 and created these more significant penalties, now the focus of this litigation is going to be on the offense that has the minimum mandatory severe penalties. Now, with respect to the statutory language itself, there has been a lot of discussion in the 28-J letters and the supplemental briefs of 32-37. And our position is, is that if Congress wanted to create a continuing offense by way of the language of 32-37, the import into language, it could have put that language into 13-24 to capture that continuing offense theory. I mean, they had added the ---- Well, under your theory, then, what would be the venue? So venue statute, right? Under your theory, then, venue would lie only in the place where the person was supposed to have touched this side of the border? In some cases, that would be true, but not in all cases. Because, for instance, let's say that I'm an alien smuggler in Las Vegas, and I arrange for all these activities. I arrange for people to bring them to the border. I arrange for people to pick them up on this side and drive to Las Vegas. I mean, my conduct, I think, would reach all of the various offenses. And so I think venue would lie there, because that's a place where the offense was committed. There's also a 32- You wouldn't say that the continuing violation piece, then, of the venue statute has any application. You're just saying that, for example, the person actually did the crime somewhere else by eating it. Right. And my answer was to suggest that there could be venue in other places than exactly at the point of the border where the individual crosses. But a straight bring-to crime. A straight bring-to crime without any showing of other actors, I think the venue would be where they entered. But the theory of continuing violation would be the same, would it not? Well, I think- Are you talking about venue or substantive liability? Well, I- If the evidence shows continuing violation? I don't think the evidence can show a continuing violation in a brings-to offense, because once you're here, you're not being brought here anymore. So I don't think that it continues on. And if Congress had wanted it to continue on for venue purposes, it could have added the language that it added to 32-37. I find that to be completely inconsistent with what you said earlier in response to my question, that under a different set of facts, you could have liability for the bring-to offense, even for the party who transported to Los Angeles. Yes, if there's a showing of conduct on that person's part prior to the entry. Because it would be a continuing violation, right? Same as under the venues case. I still think that the violation would stop at the border, but that the person's prior to that point could possibly give rise to liability. Under the brings-to offense? Yes. Could I ask you a question about subsection 8-4 of the statute? I don't know if you have 13-24. I don't know if you have that in front of you or not. I thought this one might come up. It brings back the dreaded into. In the case of a person who has brought aliens into the United States in violation of this subsection, that's otherwise provided for to be decreased in certain circumstances, so I don't need to do two. How does that increase in penalty for certain bringing aliens, I'll leave out the two, into violations fit with your construct of what bringing to is? If I'm not stating this very well, but it looks like in subsection A-4, Congress is using bringing aliens into the United States. So he's coterminous with bringing to the United States in subsections 1A and 1 and, excuse me, A-1 and A-2. Did I get my question clear? If there's no bringing into terms, subsection 4 doesn't have any meaning. The crime itself, however, is described in the sections that we've been talking about today, which brings to and attempts to bring to the United States. That change is certainly a purposeful change. As this Court recognized in Gonzalez-Torres, that the point there was to capture liability farther out than the brings into language that was previously employed in the statute. But doesn't subsection 4 suggest that it didn't mean to stop there? I think that subsection 4 is an artifact, because the brings into language was interpreted in this Court's decision in Aguilar and also in a case called Anaya, which is discussed in the legislative history to the amended 1324 as being synonymous with entry, actually entry under the immigration law. So what would your view be of how this penalty provision would apply if a group of 20 aliens arrived at the border and didn't get past putting their toe on the border? It would seem that subsection 4, you're saying wouldn't apply, isn't intended to apply, but I guess I just see a disconnect between subsection 4, which seems to focus on the nature of the group or the nature of the individuals brought and is not focused as you are on the location quite so much. Well, I think the problem with this provision is this language, brought into or brings into, is interpreted to require an entry under the immigration law, which means free from official restraint or alluding inspection or something along those lines. So that's a highly technical requirement. So I think that the most reasonable interpretation of this is probably to interpret it as actually meant bring to instead of bring into, and that there was just some sloppy draftsmanship when the statute was amended. So let me see if I understand your answer. Your answer is, yes, if you brought 20 people to the edge of the border or you endangered their lives when you got them to that point, this would still kick in. Well, as I read it, this requires an entry under the immigration law. So that or the other statutes no longer have the entry distinction, and there is an entry requirement as to 1 and 2, which we know pretty sure there isn't one because that's why the amendment was made. That's correct. So, I mean, it's possible the statute wouldn't apply at all unless it was interpreted some way other than exactly the way that it's written. So it doesn't fit together very well, I guess you should answer that. That's correct. It doesn't. But that doesn't change at all the purposeful nature of the change from brings into to brings to. And, again, if Congress had wanted to capture even whatever brings into means, it could have written 1324 so as to cover brings to or brings into.  Into to, did you follow that? Changes into to. But all they really were trying to do is get rid of the entry requirement. That they had a problem with this, as I understand the example, which is really brief, I don't know anything else about it is, people would bring the Marion Cubans and instead of letting them lose, they would hand them over to immigration authorities and say, here. And so they'd be under official restraint. That's correct. And then they wanted to use it as a defense to the prosecution by saying, look, we didn't bring them into the United States and let them go free. We brought them into the United States and handed them over to the authorities. So Congress said, no, that's not really, shouldn't be a defense. So they changed one little word. They changed into to to accomplish their purpose. Why isn't that the most plausible reading of the statute? It's exactly the same statute as it was before, except you no longer have the official restraint requirement. As soon as you cross the border, you're guilty. And so long as you keep your foot outside the border, you're not guilty. You're on complete offense. There's no question that the purpose of the amendment and the legislative history makes it clear was to get rid of the entry requirement that this Court had adopted and that the district court in Florida had adopted. But that doesn't mean that they also intended to create a continuing offense. There's no language that that's a different that's a that is a that is a different question, whether they did or did not. And it's a question I'll get to in a minute. But but if you view the amendment as simply doing away with the entry requirement, then you have a statute that the popular ad says you do not commit an offense or offense is not complete until you actually cross the border. So you get you get past this whole question is what it means to bring to you sort of sneak up to the border and say, you know, head this way and you're going to say no, you actually have to cross the border. And that's what bringing to amounts to. But even if you cross the border into an ambush, even if the border patrol is there waiting for you, it doesn't matter. You cross the border, you've committed the offense. Then you get into the venue statute. And the venue statute becomes quite clear. That becomes an importation offense. And the venue statute extends to continue makes a continuing. Well, I don't agree that the venue statute applies to 1324 because the venue statute add imports a person into the United States. Congress didn't put imports into the United States into 1324. It says it involves importation. It doesn't say it has the kind of importation. I mean, what it says, let's see, what it says is any offense involving or the importation only involving the importation of an object or person in the United States. Correct. Why isn't the offense as described, the one that ends or the one that is complete once you step across the border and involve an offense involving importation? If you carry a person, it's a person. If it's carrying an object, it's an object. Because the importation into language, number one, was not adopted in the statute. Number two implies a continuing course of conduct. If Congress had wanted to capture a continuing course of conduct in the statute, it could have said so. It could have said brings to or imports into. But it did say so. I'm sorry, Your Honor? I think it did say so. I mean, what did it say? In 3237. In 3237, it did say that. But in 1324, it did not. I mean, there are immigration statutes. I think 1328 is an example that actually uses the import into language. So it would be an odd construction to say, well, Congress specifically used the import into language in 1328, chose not to use that language in 1324, but were going to construe 1324 to be an importation statute anyway. If they had wanted that result. What else do you call it when you bring somebody into the border? How do you describe it? Let's say you don't want to use the word importation. How would you – let's say they wanted to apply that statute and they wanted to sort of avoid using the word importation in the value statute. How do you describe a crime which involves carrying a thing or person across our border? How do you? Well, by using the brings to language, rather than using the import into language, which was available from 3237. Suppose Congress had just said any offense involving smuggling alien? Well, then there would be a question of ambiguity as to what smuggling actually meant. But, I mean, again, and we also have the Patoussi standard. We're still freezing your defense for us. Patoussi standard, which is that you can't find it to be a continuing offense unless the language of the substantive offense compels that interpretation or the nature of the offense requires that it be considered continuing. So when Congress is leaving it to the court to interpret whether or not brings to means the same thing as import into, which is the language they chose not to use, then I don't think that you can meet the Patoussi standard in terms of the necessary clarity in expressing that interpretation. Does the transportation statute require a nexus to the border? The transportation statute does not. It requires that you transport someone that you are new or in reckless disregard of the fact that they've come to, entered, or remained in the United States in violation of law. There used to be, in the old version, a requirement, I think, that you had to act within, you know, three years of the original entry. But now it doesn't have that. I mean, basically, once you cross the line and you're being transported within the United States, then 1324's transportation offense actually applies. I said any transportation inside the United States for any purpose would ostensibly satisfy the transportation statute. Well, it has to be in furtherance of the violation of law. That's included, actually, in the language of the transport statute. And that language would cover — I mean, Ms. Lopez was convicted on three counts under that statute. Assuming, hypothetically, that this is a continuing offense, what is your position on when the offense ends? Well, if this is a continuing offense, then I would urge the Court to adopt an interpretation similar to Dinkane, which is a case actually cited by the government, which said that bank robbery continued on as long as there was basically hot pursuit, so that once you're just leaving the bank until you reach, you know, some spot where you're no longer being pursued, that's a much more modest requirement, I think, than what the district court implied here, where the immediate destination could be anywhere. It could be Los Angeles. It could be all over 100 miles away. It could be Maine. It could be Chicago. And we have no idea. I mean, ultimately, if you create an immediate destination, it's going to require courts to make numerous legislative determinations. I mean, how far is too far? How far is hot pursuit? Well, I don't think you should adopt the hot pursuit requirement. I think that you should say, well, Congress said brings to the United States. You're being asked in the alternative if we don't agree with that position, and you're saying somehow, at least I understood you to be saying that hot pursuit is a better task than immediate destination because it's clearer. But I guess I'm asking you why it's clearer. Well, it's clearer because if you're in hot pursuit, as was the case in Dinkane, when this Court adopted that standard, you can tell whether or not you're being pursued by the police and whatnot. If you're entering the United States, you can tell whether or not you're being pursued by Border Patrol or whether or not... So what he's pursuing you brings to doesn't continue past the border? Is that your... That's correct. May I just make sure I understand the thrust of your position? Your position is that when Congress amended this in order to catch the Mariel Cuban situation where they came to the border but didn't cross it, that Congress actually limited the statute to that situation? I don't think that it... Isn't that the thrust of what you're arguing? I think all Congress did was eliminate the entry requirements. Judge Kaczynski had pointed out earlier. I don't think that the scope of liability changed at all. I don't think that that... Okay. Basically, I think that brings into offense... It's still there. ...this Court in Aguilar defined it as requiring an immigration law entry. So I think the offense was complete when you had an immigration law entry under the former brings into analysis. Now it just brings to, so it ends earlier. The actual entry statutes, 326 and so on, are, I assume, understood to talk about a point in time and not a continuing offense, is that right? Yes. Yes. The entry by this Court in Rincon, Jimenez, and by the Supreme Court in Coors has been interpreted not to be a continuing offense. If I may, I'd like to reserve the remainder of my time for rebuttal. Good afternoon, Your Honors. Good afternoon, Judge Gould. My name is Jason Forge. I'm here on behalf of the United States. Your Honors, I'd like to pick up where Judge Kaczynski left off, because I think it's the critical part of this analysis, and I think it is dispositive of the issue before the Court. I commend Mr. Hubachek for the concessions. It is clear what Congress was doing when they revised 1324. As Judge Kaczynski stated, as is clear from the legislative history, they were just trying to eliminate the official restraint doctrine. Well, what they actually did was they changed the language of subsection 1, and they added subsection 2, which at the time was only a misdemeanor. Is that right? That's right. Actually, Your Honor, I don't believe it was only a misdemeanor when they changed it. Prior to them changing it, yes, because I think the legislative history refers to aggravating circumstances, including the financial gain. I'm not sure about this, but an 86 or a 96, I don't know. But at any event, the subsection 2 was supposed to deal with the Mariel Cuban-like situation, i.e., somebody who was brought to the officials at the border, and maybe never even stepped foot in the United States, but was at the border, and they were saying, here are a bunch of illegal aliens, do something. Well, Judge Berzon, that is one matter that we wish to correct. You can't bring an individual to the port of entry without crossing the border. I think that's critical in this analysis. But that's not necessarily true. It's not true, for example, at the Vancouver Airport. And it's probably not true other places, either. Well, it's certainly true in Florida, and it's certainly true in the Southern District of California. In order to bring an alien to the port of entry, you must inherently cross the border. And I think that's one of many reasons why it is clear that the interpretation Judge Kavithia described is correct. But the important thing to me at this juncture is that they didn't just change 2 to Intune, Intune to 2. They added something. They added several things. And one of the things they added, and this, I think, just confirms the point that I'm making, one of the things they added was an additional class of aliens that this statute reaches. Prior to the revisions in 1986, the aliens that individuals were prescribed from bringing to the United States were aliens who did not have permission to enter or to reside in the United States. Those two terms, obviously the first one includes entry, and the second one inherently includes entry, those two terms opened the door for the Official Restraint Doctrine. What Congress did in 1986 was they added a third class of aliens that were covered here. And those were aliens who did not have authorization to come to the United States. And it is obvious that come to, in that context, accompanying the change to is talking about crossing the border. Because we don't and we can't authorize people to walk up to but not cross the border. So clearly when we're talking about a class of individuals who either have or have not received authorization to come to the United States, we are talking about a class of individuals who either have or have not received authorization to cross the border into the United States. The title of Section 1324 still says bringing in and harboring certain aliens. And Judge Graber pointed out subsection 4, we don't even have to go that far down. We can stay within A, B, 2, and just look right above the financial gain subsection and see that in the case of an offense committed with the intent or with reason to believe that the alien unlawfully brought into the United States will commit an offense against the United States or any state punishable by imprisonment for more than one year. That's within the subsection that we're talking about here. You can look at this Court's model jury instructions. But what does this tell us about whether, if we know what they were trying to do is eliminate the entry section, and even if we assume that they have to step foot in the United States, what does that tell us about where the crime ends? And more particularly, what exactly is your position? Is it that it ends when they – it starts when they step over and ends when they get to their immediate – immediate destination, or why? Judge Berzon, I think immediate destination is sufficient, but it's not ideal. What I think is ideal is it continues until they reach their bargain for or agreed upon destination. Let's not forget, we are talking here about a crime of bringing to the United States for financial gain. There is an arrangement that has been made. There is no one involved in this offense, not the people who made the arrangements in Mexico, not the aliens being smuggled, not the people who are picking them up at the border. There is no one involved in this offense that thinks it is over until they reach their bargain for destination. Because the statute, that language applies with or without the financial gain. Well, we're talking here about financial gain, and it is a specific element. And under Rodriguez-Moreno, we have to consider all of the elements of the offense. But the agreement to crime, whatever it is, is a crime. Whether or not there is financial gain, there is a greater penalty for financial gain. So – That is certainly true, Judge – So it's not a bargain. Exactly. In that case, as I indicated, it could be the bargain for destination or the agreed upon destination. Let me give you a hypothetical, Steve. Let's say that the aliens are dropped over the border at a pickup point. They're taken from the pickup point to a safe house, and they're transferred from the safe house to Los Angeles, and they finally go to their final destination in Tacoma. The bargain, they're trying to get to Tacoma. What's the immediate destination under your theory or the agreed upon destination? Let me just ask one question to clarify. Were the same – the people – the same people with whom the defendant was acting in concert bringing them from Los Angeles to Tacoma? No different people along the way. If it's – I know, but are they all acting in concert together? The evidence shows – well, if we have to show that beyond a reasonable doubt, we have to show that the agreed upon destination – It's the government's theory that they're in concert. If it's the government's theory, and we can prove it beyond a reasonable doubt, then we can prosecute it anywhere. So you can take it – you can say, well, they're guilty of bringing to all the way up to Tacoma. Absolutely. They're guilty also for the same conduct of transport, right? That is true as well. I mean, assuming we have to add a few details, but yes, they'll be guilty of both. And I think this is a very straightforward application of 3237A. And again – But, you know, it really does, when you talk about – at least from my reading of what Congress is trying to do, it's trying to have a seamless but segmented theory of liability, that there's a brings to – there's an incident that brings to Congress, and there's the beginning of the transporting crime. And under your theory, after you get past that first drop-off point, even if that's the immediate destination agreed upon, then basically you're punishing two criminal – punishing the same conduct under two separate statutes. Well, Judge Thomas, I think we're forgetting the fact that in most situations where we don't have a bringing offense involved, and we're just talking about transportation, we're not talking about a linear chain of events. We are talking about an alien or a group of aliens that have been present in the country. And so it's not – there is a significant disconnect between the actual bringing and the transportation. So I don't – I don't subscribe – Well, it's hypothetical to the case. That's the comment I have in front of us right now, if I've misstated the hypothesis. No, but I'm lining up here. Can I grab some water? Yeah. Okay, well, you get the water. I'll jump in. I just – I don't subscribe to the philosophy that Congress created these discrete portions and one must end before the other must begin. That is entirely inconsistent with 3237A. Well, I just – I'm just going to ask a question. Don't we take care of Judge Thomas' concern with the doctrine of merger with respect to the punishment? In other words, we're not going to punish the defendant in his hypothetical by giving them consecutive sentences for both the transportation and the liability under the heavy or punished bringing to him. We absolutely could take care of it in that way. There are different elements in the offenses there. The one does not inherently mean the other was committed. But certainly with the doctrine of merger, and certainly in a case like this, that did occur here. The sentences for the bringing counts were made concurrent to the sentences for the transportation. So the answer to what your preferred rule is, the answer to the hypothetical is Tacoma. It goes all the way to Tacoma. That's correct, Your Honor. And I think there's no – we have to look back at the Bonner decision. How long a delay do you need to break the chain? So you bring them to the safe house. They spend two days there. They then go to Los Angeles and spend five days. How many crimes is that? Judge Reinhart, I think it's two. We have the transportation, assuming we have the additional elements, and we still have the bringing offense, assuming that we're talking about the destination it was bargained for was, I believe you said Las Vegas, because that was the second destination. No. I said you start out and you drop them in a safe house three miles across the border. Then you go to Los Angeles. Then you go to Tacoma. Okay. But you have a two-day break and a five-day break. And three different crews transport you. Is the one offense the importation all the way to Tacoma? Yes, Your Honor. Assuming that the government is able to prove beyond a reasonable doubt that this is all one concert of action, that all these people are working together, this is the offense of bringing them to Tacoma. You could prove that and they didn't get to Tacoma, as happened here. In fact, they never got to Los Angeles. Then has the crime been completed or not? The crime has been committed. It has not been completed. But it's a continuing offense. So you would say that it's committed for that entire time. That's correct. Again, I don't want to get caught up in semantics. In this context, I find it easier, at least for myself, to use complete as being synonymous with ended. Counsel, what was the bargain for place of destination of these individuals? Los Angeles. And Your Honor, I'm glad you asked that question because we even had testimony from one of the aliens who said the money wouldn't be due until he wouldn't be charged until he reached Los Angeles. So how can we fairly say? Better than the United. How can we fairly say that this crime had ended? This crime of bringing to the United States had ended for financial gain. How can we fairly say that crime had ended before the financial gain was even due? Again, it deserves a fine matter of contract law. How so, Your Honor? It's a fine matter of contract law. Your Honor, I think it's a very straightforward application of the. Let me ask you another one. What happens if somebody brings an alien to the border, up to the border and says, you know, if you had to keep heading this way at about 600 feet from here and keep going due north, you'd be in the United States. Crime committed under this statute? Your Honor, I think it would be a crime committed because assuming the alien crosses the border. First of all, we can charge the attempt. Second, I think it would be. I know that. I know that. If I wanted to talk about offense, I wouldn't ask you that question. I think it would also be a crime in terms of the actual offense because under Section 2 of Title 18, the defendant you're describing would have caused the alien to cross the border. And so the crime of the crossing, which is necessary, and you can see it in the defendant's proposed instructions here. You can see it in this court's model jury instructions. You can see it in the jury instructions that were used. We're all talking with all of those instructions. Everything in this case is talking about coming into, crossing the border into the United States. And so what if the guy stumbles and breaks his ankle before he gets to the border and can't complete the crossing? And I don't want to talk about attempts again. Yeah, well, if you're banning me from talking about attempt, then they're free birds. Not to mention we can't make them cross the border. How is that? So in your position, you're not bringing somebody to the United States when you bring them off to the border? Your Honor, I'm not going to take an inconsistent position. I am firmly convinced. I'm glad to get you to. I am firmly convinced, given the legislative history and given the language of the statutes, given how parties on both sides of the courtroom have interpreted the statute as far as requiring a crossing, if we factor out the attempt portion, no, I do not believe that is a crime to approach the border. Think about. How do you reconcile that with the plain language of the statute? You're so fond of the plain language. I mean, you know, if you think of those carhops, you're probably too young to remember carhops, but you know, you throw it on your window and they bring the food to you. They'd never get into the car. They'd hand it to you off on the tray that was sitting outside your window. I'm going to steal Judge Graber's response for that. If we see these commercials come to Canada, come to Arkansas, these different places aren't advertising their country or their state as destinations so people can approach at the border and look what a beautiful place. They want you to come. If I invite you over to my house. But Judge Graber is completely right, and I agree with her. That certainly is also a bringing to Arkansas. But so is my example. You can do a lot less and bring something to a place or a state. You know, let's say, for example, FedEx brings a package and I say, you know, don't cross the threshold. You know, I've got wet paint on the floor. Just hand me the package to the door. They brought it to my house. That's true. I mean, I don't want to get hyper technical. So, you know, the fact that Judge Graber is right doesn't mean that there's no other way of bringing food, right? So the question is, why isn't the guy that walks up to the border and says, you know, here, senor, go north. Why is that a completed crime at that point? Well, in your in your in your plan reading of the statute? I think I think because even though I can't talk about the attempt offense, I have to at least be able to refer to the fact that if you say attempt one more time, I'm going to get really ticked. But would that language have been in there if they meant for this to be a crime? If you didn't cross the border? What what then is an attempt? If you're if you're if you're just in Tijuana and I'm asking you, I'm asking you about you, you know, you want to rely on plain plain reading. I mean, the problem you have if you say, yes, that is that is an offense. Then you get into trouble 3723, which talks about importation, because at that point you can violate this statute without having actual importation, which is why you don't want to say that that is a bring to offense. Your Honor, the reason why I don't want to say that I don't think it's a fair reading of the statute. I don't think it's a fair. If you look at the legislative history, if you look at that, which is cited in every sentence of the case, if you look at legislative history of 1324 in discussing this change, the way Congress described it accordingly, the bill clarifies that a person who knowingly transports an undocumented alien to any place in the United States, it goes on to say. Additionally, the bill increases penalties for one knowingly bringing aliens, whether documented or not, and whether an entry occurs or not, to any place in the United States other than designated ports of entry. The Supreme Court case law with regard to continuing offenses in general requires some indication in the statute that that's what's intended. It's in the language. And in particular, there is a footnote in one opinion that says that entry is not a continuing offense. Well, this is not an entry offense, though, Your Honor. Well, what is the difference between this and an entry offense for that reason? In other words, it was an entry offense. And what's been changed is now it either stops before the border or it stops after the border without requiring that there be no official surveillance. But it doesn't seem to go beyond that in terms of the words of the statute. So the question is, do we add something to the words of the statute to make it a continuing offense in light of this footnote in Coors which says that entry isn't one? Well, first of all, to address Coors, it's a little bit unfair to simply say the crime of entry is not continuing because really the way it works is the crime of entry is not committed until the person is found in the country. So although technically it's true that it doesn't continue once they've been found in the country, that does not mean if somebody enters in San Diego County in 1999 and they're not found until 2006. Well, there's a found in crime. It's a different one, as I understand it. Actually, I believe this Court's case law has wrapped them both up together. So you can't distinguish between reentry and found in. The two are wrapped up together. And so the government can't. In other words, we couldn't say, well, we found the guy in New York, but we had proof that he entered in San Diego. So we're dragging him back to San Diego and prosecuting him there. And I think this Court's made it clear that, no, you can't do that. I believe the Court was saying that the offenses here are unlike crimes of illegal entry. Those offenses are not continuing ones, as entry is limited to a particular locality and hardly suggests continuity. So whatever we said, the Supreme Court seems pretty clear about it. Your Honor, I understand. Well, first of all, it's a footnote in the case that the statute at issue was a remaining offense. So it is victim. There's not a full-blown analysis in there. It had nothing to do with the ultimate disposition in the case. And I think the Supreme Court's more recent statement of analyzing continuous offenses in Rodriguez-Moreno is probably a little more useful, because in Rodriguez-Moreno, the Court said, look, the verb test is fine, but you can't look at just the verb test without also closely examining the other elements of the statute. And here, those other elements include financial gain. And also, Judge Berzon, in terms of showing you the difference between the entering and the bringing, bringing, I would say, is much more synonymous with possessing or carrying than it is with entering. And possessing and carrying offenses have historically been continuous offenses. How would you frame the issue that we have to decide? Well, and the easiest way to frame the issue is whether or not Section 1324, bringing offense, is a continuing crime. I would say a little more technical way to frame the issue is when is a Section 1324 A2Bii offense committed, and does it end at that point? Do you agree that this defendant didn't pick up the alien until inside the border? I agree that she didn't pick up the aliens until they were inside the border, but I disagree that there was no evidence that she was involved prior to their crossing the border. It certainly wasn't the focus of the trial. It certainly wasn't argued, but there was evidence that the load vehicle that she used to pick up these aliens was registered in her name four days before she picked them up. So that is certainly – there is certainly evidence from which a jury could infer that she was involved prior to their crossing the border. So I – But the jury wasn't so instructive, so there's no way to – even if there was some evidence, nobody's made a finding of that. Certainly, the jury was not instructive. Specifically, they could find she was involved beforehand, but – I mean, it wasn't instructive in a matter of whether she was found and found before. That's correct. I'm not – I'm not suggesting that the jury made a beyond-reasonable-doubt determination that she was involved beforehand. I'm simply saying that if we look at this in a – from a Rule 29 analysis, which I don't think we should, but if we look at it from that perspective, there was evidence submitted that – from which a reasonable jury could infer she was involved beforehand. But that's not the issue we have to decide. That – I hope that's not the issue you have to decide, Your Honor, because I – because I – you don't get to that issue – you don't get to that issue if you find that this is a crime involving the crossing of the border, and because of that, under Rule 3237A is a continuous offense. Even though this defendant was not involved before the border was crossed. Exactly. And I go back to the Dinkane case that Mr. Hubachek mentioned. I did cite it in the 28J letter. That is a situation where the bank had been robbed. There's no question the crime had been committed. It just wasn't completed. So even though the crime had been committed, someone could aid in a bet after the point of commission. And I view this – if you ignore the evidence of her involvement pre-crossing, I view this as a directly analogous situation. Doesn't this actually – using the word completed, doesn't that actually create some ambiguity, because we really ought to be talking about ended. The crime was completed upon the crossing of the border according to the government's analysis, if I understand it. Correct? Justice, my – not correct. If you're viewing completed as being synonymous with ended, the crime had been committed. Yes, that is my point, that all we need to deal with is when it's ended. The Second Circuit case talks about immediate destination. I think we all recognize that's very ambiguous. Immediate destination may be the bathroom. Hardly wait to go to the bathroom. That's not what this is talking about. Some other judges use the illustration of Tacoma, for example. What's the government's suggestion? If we agree that this is a continuing offense, and if we agree that it has to – we have to define what ended means for purposes of 1324, what's the government's position? You've got drug cases where they talk about the final destination. Right. You've got the illustration a minute ago of hot pursuit. That didn't seem to satisfy anybody. What's the government's position? What is the definition of ended for purposes of this statute? I think – I'm sure I said it. I think it is the agreed-upon or bargained-for destination. And the reason why I think that is fair is, number one, it is true to what Congress intended with 3237A. And number two, more importantly for the defense, it places the burden on the government. We have to prove beyond reasonable doubt that the agreed-upon or bargained-for destination had yet to be reached. Why is that more logical to say it's the first agreed-upon destination if we adopt your theory? In other words, in our hypothetical, why wouldn't drop-off point be – the first agreed-upon drop-off point be the logical ending of the bringing to offense? So, Thomas, the reason why I don't think that is the most logical choice is because we can't forget, at least in the context of financial gain, this is bringing to for financial gain. We have to – one of the elements we have to prove beyond a reasonable doubt is this is being done for financial gain. So I just don't think it's fair or – Why couldn't it be transporting for financial gain? I mean, there's still a crime there, and the financial gain is still an element. I don't think the transportation for financial gain carries with it the same sentencing consequences. I'm not sure there is a financial gain enhancement for transportation. I'll have to check and make sure. I see what you're saying. There is one, but it doesn't have the mandatory minimum. That's really what you're trying to get at. Well, that's what Congress – It has an enhancement, but not a mandatory minimum. Yes. Yes, Judge Bergeon. We are trying to reach the mandatory minimum for the cases in which somebody is bringing aliens to the United States for financial gain. Yes, that is what we're trying to do. Before the individual sentencers, they say, you know, we'll stop and rob a bank. That would be related conduct, and for sentencing purposes that would be – that would not become a separate offense in any way. I didn't say there can't be any separate offenses committed while they're – It's related conduct in the sentencing guidelines. In the advisory sentencing guidelines. The offense has not ended. It has been committed. Is it related or not? I would have to check back in the guidelines, the advisory guidelines, in terms of the definition of related offenses, but regardless of whether it would relate or would not relate, I think in that circumstance, I don't think it would group. There's certainly no way to group the harm that's being caused by robbing a bank with illegal aliens to the United States. I think ultimately it would be maybe an interesting discussion. I don't think it would have an impact. It's actually not a law of the circuit. It's a case by Neal Johnson. It says if you do it before the offense is completed, it's related conduct. Well, I would have to see – I would have to read that case and see whether – again, the word complete can get us into trouble in this context because it might have – It is. If that's the law, then anything that happens along the way before that endpoint, whenever that destination, payment destination is completed, would be rolled in. Because in your view, the crime would not be completed. It would still be continuing until that endpoint. Justice, the only thing I can tell you for certain is that is my position, this crime is continuing. I'll take your word for it that that means, therefore, that any crime committed while it's continuing is related. So, as I understand your position, if, for example, somebody arranges to be brought over the border from Mexico and met by a relative to bring – and the relative's going to bring them to their house in Los Angeles, the relative is – for no financial gain, just because the relative wants to bring them to their house now that they're in the United States, that relative is an aider and a better of the bringing to the crime. Absolutely. So, it has nothing to do with the financial gain in the end? No, it could have something to do with the financial gain. Agreement doesn't have to be a commercial agreement. Agreement doesn't have to be a contract. It just has to be an understanding you're coming to my house. That's correct. It doesn't have to – like I said, it could be an agreed upon destination, a bargain for destination. But what is critical, though – and we can – I agree that it's not clear cut, the ending point. I do think the agreed upon destination or the bargain for destination is the best way to define it. But it certainly continues beyond the point where they were in this case. This person who does the driving has to be in cahoots with the people who brought them across the border or not? It has to be in cahoots in terms of their acting in concert, yes. There has to be. They're going to drop them off across the border and then in agreement with another person, they're going to pick them up and bring them to their house. Exactly. If I make arrangements with my brother to pick me up a bush just north of the border of Mexico, and I make arrangements with someone in Mexico and I pay them to bring me to the bush, those are two – there is not a concert of action there. I'm the only thing linking the two. They are not linked together. And so my brother would be guilty of a crime, but it wouldn't be – Of transporting potential. He'd certainly be guilty of transporting. Now, what happens when the defendant is not part of this agreement? You talk about agreed to, but the defendant isn't the person striking the deal. To what extent does the defendant have to be linked to the deal or linked to knowledge of the deal? So if you're going, for example, Los Angeles to Tacoma, the person doing that transport may know nothing about what happened before. Well, Justice Kagan, the defendant doesn't have to be actually at the table when they make the deal, but we certainly have to prove beyond a reasonable doubt that the defendant intends to further this. They have to know they're a piece of the larger plan. Absolutely. Absolutely. And the beginning part of that larger plan has to start outside the country. Otherwise, it's the brother you talked about. Physically, well, the brother that I talked about is just talking to me, not talking to the people who are actually doing the bringing. Physically, it has to start south of the border, but it could start, with Mr. Hubachek's hypothetical, with a phone call from Las Vegas. It could the process could have started there, but the crime could not be committed solely. Suppose the truck driver doesn't know where she's going and she's arrested, and she has no indication that she's going to Los Angeles or Las Vegas or anyplace else. As far as she's concerned, she's waiting for orders. Right. Has she not brought them into the country? Judge B? Bail. Judge B, I believe in that circumstance, the burden would still be the same. It would be tougher for us to prove, but we'd have to show that in order to convict her of bringing to, we'd still have to show she was part of this concert of action. And perhaps she had a cell phone that received a call from a smuggler or something along those lines. But we would have to show a concert of action. I think it would just be tougher. Thank you. And your time has expired. If I may, I'd like to return to one of Judge Thomas's questions about the seamless but segmented web that Congress set up to catch alien smugglers. I think that this Court's decision in Vaux-Lieu counsels that you look at the segments and the entire statutory scheme in deciding whether or not it continues. In Vaux-Lieu, this Court was confronted with a crime of smuggling. It was a crime of assisting escape. And the Court noted that there's also a crime of harboring an escapee. So this Court did not adopt a broad interpretation of assisting an escape because of the existence of another offense. Well, the same analysis applies here. We've got the brings-to offense, and the other offense that exists is the transport offense. And again, when Congress created this scheme in 1986, there was no reason for it to intend to allow the brings-to offense to encroach onto the transportation offense because those additional penalties didn't exist at that point. Counsel, if you adopt for arguendo here that this is a continuing offense, I know that's not your position, but if you adopt that, counsel, but the government has suggested that the standard ought to be that the end would be an agreed-upon or bargained-for ending or termination. What's your position on that? Well, I would disagree with that because not every brings-to offense requires any sort of financial gain. Well, certainly it's not financial. You can have an agreement without finances being involved. Well, I still think that creates a substantial problem because what if you never reach your agreed-upon destination? Does that mean that the offense never ends, that the statute of limitations never begins to run? I think that's the kind of interpretation that Toosie suggests. Do you feel better about intermediates? Yes, I do. I mean, in this case, the people were sitting for two days before Ms. Lopez came and picked them up. I think that at that point, I think liability should have terminated for that offense, absent some showing at least before that point, which is why I brought up the Dinkane case, which I think is a much more modest extension of an offense than the immediate destination, which could be anywhere in the United States. You take what Judge Reinhart said. You've got Los Angeles, then you've got Tacoma. You've got days in between and so on. How does that work with the intermediate termination? Well, I think, again, getting back to Dinkane, that if you adopt a situation where the individuals are actually here in the United States, they're not being pursued, they're not otherwise being hunted, as was the case here where they were not pursued case. Right. Yeah. And I think that would take care of the problem. And that would apply directly here. Under Judge Tomlin, my hypothetical, I gather, your first position was it stopped at the border. Right. The second position is that it stopped at the place where they were dropped off. Yes. Yes. And also, my time is just about up, but the entry offense is not a continuing offense. I think Mr. Forge's comments went to the found-in offense of 1326, not entry in 1326 or 1325. Thank you, counsel. Your time has expired. The case just argued is submitted for decision. That concludes the Court's calendar for this afternoon. The Court stands adjourned.
judges: Schroeder, Pregerson, Reinhardt, Kozinski, Hawkins, Thomas, Graber, Gould, Berzon, Tallman, Rawlinson, Clifton, Callahan, Bea, Smith, Cjj